In re TENNA CORPORATION, Debtor.

Charles J. NEUGER, Trustee, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 84–3971.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1985.

Decided Sept. 17, 1986.

Robert L. Handros, Bruce Ellisen (argued), Tax Div., U.S. Dept. of Justice, Washington, D.C., Glenn L. Archer, Jr., Randolph Baxter, Asst. U.S. Atty., Chief, Appellate Litigation Div., Cleveland, Ohio, Dennis Zapka, for defendant-appellant.

Kenneth A. Bravo (argued), Gus Bahas, Alan E. Schabes, Charles Neuger, Cleveland, Ohio, for plaintiff-appellee.

Before JONES and CONTIE,* Circuit Judges, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

The government appeals the district court judgment, 53 B.R. 493, affirming a bankruptcy court judgment that a tax payment made to the Internal Revenue Service is avoided as a preference under 11 U.S.C. § 547 (1982). This case presents the narrow issue concerning the appropriate time for testing the preferential effect of a payment. Both the district court and bankruptcy court concluded that such a payment should be tested as of the date the hearing on the adversary proceeding is held, thus determining that the tax payment was an avoidable preference. We disagree and accordingly reverse.

The facts of this case are not in dispute. On October 5, 1979, the debtor, Tenna Corporation, paid the Internal Revenue Service $527,264.37 for income taxes and assessed deficiencies from prior years. Two months later, on December 5, 1979, Tenna filed a Chapter 11 bankruptcy petition for reorganization under 11 U.S.C. § 1101 *et seq.* (1982). During the Chapter 11 proceedings, Tenna borrowed substantial funds from two banks to continue its operation. As security for these loans, the bankruptcy court granted the banks super-priority liens on all of Tenna's property pursuant to 11 U.S.C. § 364 (1982). Tenna's attempted reorganization subsequently failed and the case was converted to a Chapter 7 proceeding on September 10, 1980.

Tenna's trustee filed for an adversary proceeding on February 6, 1981 in the bankruptcy court to avoid the earlier tax payment made to the IRS as a preference under 11 U.S.C. § 547 (1982). The hearing on the adversary proceeding was not held until November 8, 1983. At that time the trustee had liquidated virtually all the assets of Tenna's estate. All that remained was approximately $235,000 in bearer bonds and $26,500 in accounts receivables. The debts of the estate included over $4,197,289 in super-priority liens owing to the two banks, $2,000,000 in government claims, $221,000 in wage claims, $31,000 in contributions to employee benefit plans and $26,000 in administrative expenses.

The government conceded that the trustee established four of the five elements needed to determine whether a payment can be avoided as preferential. The issue before the bankruptcy court was over the application of the fifth element of the test, 11 U.S.C. § 547(b)(5).[1] That subsection provided:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
> (1) to or for the benefit of a creditor;

---

* The Honorable Leroy J. Contie became Senior Circuit Judge July 1, 1986.

1. 11 U.S.C. § 547(b) (1982) provided:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

\*    \*    \*    \*    \*    \*

(5) that enables any such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The government argued that this section requires that a hypothetical Chapter 7 liquidation be constructed as of the date the petition in bankruptcy is filed. The bankruptcy court held that the § 547(b) determination must be made taking into consideration all of the events that transpired after the petition was filed up until the date of the hearing on the adversary proceeding. Using that time as the dispositive date, the bankruptcy court compared Tenna's assets with its debts, including the post-petition accumulated debt, and determined that the tax payment was a preference and awarded interest. The district court affirmed. The government now appeals both the judgment and the award of interest.

This case presents an issue of first impression. The government argues here, as it did before the bankruptcy court, that the date for testing whether a payment can be avoided as a preference is the date the petition in bankruptcy is filed, and a hypothetical Title 7 distribution must be performed as of that date. Tenna's trustee argues, on the other hand, that the date of the hearing on the adversary proceeding is the appropriate testing date because § 547(b) requires that the actual anticipated distribution to all creditors owed by the debtor be included in the determination, including all debt incurred after the petition is filed. The date used is considerably important in this case because the balance of assets available for distribution and the priority status of the creditors of the estate would be significantly different on each of the dates. For if the super-priority liens and other post-petition debt had not been included in the calculus for distribution purposes, then the government's claim would have been a higher priority claim, and it might not have received more than it would have if Tenna's assets had been distributed under Chapter 7.

At the outset, we must clarify what should be a rather obvious issue in this case. This case does not simply involve the question of whether a hypothetical Chapter 7 liquidation must be performed in a § 547(b) determination in a Chapter 11 proceeding. Tenna's trustee concedes that, by definition, in any Chapter 11 proceeding a hypothetical liquidation must be done. The Code indicates that this analysis must also be made in rehabilitative proceedings under Chapter 13, *see* 11 U.S.C. § 103(a) (1982), and, of course, in Chapter 7 proceedings. In any of the three proceedings, the bankruptcy court does not liquidate the assets when making the § 547(b) determination, it determines the priority status of all creditors as "if" the Chapter 7 liquidation had been made. Therefore, our inquiry is concerned solely with determining the proper date when that hypothetical liquidation must be made.

Both the bankruptcy court and district court based their holdings primarily on a

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Supreme Court case decided fifty years ago. *Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936), involved the interpretation of the preference provision of the predecessor act to the Bankruptcy Reform Act of 1978. The former act provided that a payment was an avoidable preference if it enabled "one of the [debtor's] creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." 11 U.S.C. § 96 (repealed Nov. 6, 1978). The central issue in *Palmer Clay* was whether that determination was to be made as of the date the transfer was made or as of the date the petition in bankruptcy was filed. As stated by the Court:

> *Whether a creditor has received a preference is to be determined,* not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but *by the actual effect of the payment as determined when bankruptcy results.*

> . . . .

> *We may not assume that Congress intended to disregard the actual result, and to introduce the impractical rule of requiring the determination, as of the date of each payment, of the hypothetical question:* What would have been the financial result if the assets had then been liquidated and the proceeds distributed among the then creditors?

297 U.S. at 229, 56 S.Ct. at 451 (emphasis added).

The two passages above highlight the tension inherent in the parties' arguments. The government interprets *Palmer Clay* as dictating a *per se* rule that the *actual effect* of a transfer is to be determined as of the date bankruptcy results, i.e., when the petition in bankruptcy is filed. Tenna's trustee argues, and the bankruptcy court held, that the Court's reference to the *actual result* of bankruptcy imputes a Congressional intent to included all debts arising through operation of the Bankruptcy Code, among which is post-petition debt incurred pursuant to a Chapter 11 reorganization.

We can not, however, give *Palmer Clay* the broad reading that the bankruptcy court did. The Court's reference to the "actual result" must be interpreted in its proper context. The sentence containing that phrase reads, "We may not assume that Congress intended to disregard the *actual result* and to introduce the impractical rule of requiring the determination, as of the date of each payment. . . ." 297 U.S. at 229, 56 S.Ct. at 451 (emphasis added). *Palmer Clay* did not involve a bankruptcy with a Chapter 11 reorganization where the timing of the adversary proceeding was also at issue. Only two dates were compared—the date of the payment and the date the petition was filed. The actual result referred solely to the circumstances arising and debts accruing between those two periods of time. Thus, *Palmer Clay* stands for no more than that a payment should be tested as of the date the petition in bankruptcy is filed.

A number of courts have cited *Palmer Clay* in cases brought under the Bankruptcy Reform Act of 1978, which indicates that is still has continuing vitality. None of these courts have given it a more expansive reading than we do. Some bankruptcy courts have held that the § 547 determination must be made in Chapter 7 proceedings by constructing a hypothetical liquidation of the debtor's estate on the date the petition in bankruptcy is filed. *See, e.g., In re Rodriquez,* 50 B.R. 576, 583 (Bankr.E.D.N.Y.1985). *See also In re Abramson,* 715 F.2d 934, 939 n. 9 (5th Cir.1983). There are also bankruptcy courts that have cited the *Palmer Clay* rule in Chapter 11 cases and tested the payment as of the date the petition in bankruptcy was filed. *See In re Independent Clearing House Co.,* 41 B.R. 985, 1013 (Bankr.D.Utah 1984); *In re Zachman Homes, Inc.,* 40 B.R. 171, 173 (Bankr.D. Minn.1984); *In re Tonyan Construction Co.,* 28 B.R. 714, 723 (Bankr.N.D.Ill.1983). Although none of these cases involved a situation where the bankruptcy court had

granted super-priority liens to creditors after the petition was filed, unless the legislative history of § 547 or the scheme of the bankruptcy code mandates otherwise, we are compelled to apply strictly the holding in *Palmer Clay* in this case.

The focus during the Congressional deliberations preceding promulgation of § 547 was not on the testing date but on the purpose underlying the legislation. In explaining the reasons for changing the test from prior law, all Congress stated was,

> The phrasing of the final element changes the application of the greater percentage test from that employed under current law. Under this language, the court must *focus on the relative distribution between classes as well as the amount that will be received by the members of the class of which the [creditor] preferee is a member* ...

H.R.Rep. No. 595, 95th Cong., 2d Sess. 372–73, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6328 (emphasis added); *see also* S.Rep. No. 989, 95th Cong.2d Sess. 87, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5873.

Congress' concern for equality of distribution among creditors is obvious. But any argument that this concern requires us to deviate from the *Palmer Clay* rule misses the point. Congress is presumed to have been aware of the Supreme Court's interpretation of the prior preference provision. *Cf. Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978). The changes in the new provision from the prior one are not so great that we can not apply that presumption here. If Congress intended to extend the testing date to the time the hearing on the adversary proceeding commenced we can only assume it would have stated so. We can only hold, therefore, that in the context of § 547(b), Congress' stated concern is reflected only for those creditors with claims against the debtor's estate on the date the petition is filed.

Nothing in the Bankruptcy Code leads us to a contrary conclusion. Although the Code gives the bankruptcy court power to grant super-priority status to banks which extend credit to debtors during their reorganization efforts under 11 U.S.C. § 364, we can find nothing in the Code indicating that post-petition debt incurred during a reorganization should be included in the § 547 determination. We recognize that any administrative expenses incurred during the pendency of the bankruptcy proceeding should be included in the determination. *In re Independent Clearing House Co.*, 41 B.R. at 1013. It proves too much, however, to assume that including administrative expenses incurred during the reorganization must, by necessity, show a Congressional intention that all debts incurred during reorganization be included. Administrative expenses are a constant element in all bankruptcy proceedings and can be derived with some degree of certainty, even when constructing a hypothetical liquidation; super-priority liens, of the type here, do not possess these characteristics.

The bankruptcy court stated that it was "inconceivable and illogical" to construct a hypothetical Chapter 7 liquidation as of the date the petition was filed in this case. We believe that it is "inconceivable and illogical" to assume that Congress intended to permit the estate's trustee to control the timing for testing whether a payment can be avoided as a preference. Tenna's trustee, in this case, did not commence the adversary proceeding for over a year after the Chapter 11 petition was filed. The hearing on the adversary proceeding was not held until two and one-half years later. Close to four years passed between the time the petition was filed and the hearing was held. If the trustee had commenced the adversary proceeding and the hearing was held soon thereafter, the ratio of debts to assets of the estate at that time might have been dramatically different. We agree with the government that such a reading of the Code invites manipulation and that, we must assume, was not Congress' intent.

An obvious policy concern does exist in this case. There is the potential fear that

creditors will be unwilling to loan money to debtors seeking to reorganize if their super-priority loans may be somehow subordinated to pre-petition transfer payments. We do not feel, however, that this fear will become so great that these creditors will be dissuaded from lending. When a company makes any such loan, the balance sheet of the debtor will not included the pre-petition payment as an asset. So the lender should have no legitimate expectation that if the company's reorganization fails, it can recapture part of its loan out of the pre-petition payment. Whether the debts owed to post-petition lenders should be included in the § 547 determination is not for us to decide. It is a decision appropriate only for Congress.

Accordingly the judgment of the district court affirming the judgment of the bankruptcy court is REVERSED and REMANDED for proceedings consistent with this opinion. Because of our disposition we need not consider whether the award of interest was proper.