In re **VIRTUAL NETWORK SERVICES CORPORATION, Debtor.**

**VIRTUAL NETWORK SERVICES CORPORATION, Plaintiff,**

v.

**AFFILIATED TELEPHONE; Alexander & Alexander; Amoco Oil Co.; Bell Advertising; Boyer–Rosene Moving & Storage; Computerland; Corporate Products; Datapro; Compuletter; Dunn & Bradstreet; Elizabeth Israel Advertising Agency, Inc.; Ericsson Network Systems; Fishman & Merrick; G–H Products, Inc.; Hawthorn Realty Group, Keystone Fire Production Co.; Lavin, Fuller Perkins Advertising; National Business Systems; Nordic Hills Resort; North American Van Lines, Podolsky & Associates; Rockwell International; Sage Instruments, the Artworks Corp.; Tom Derpack; Tricom, Inc., Defendants.**

Bankruptcy Nos. 86 B 14849, 87 A 1022.

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 3, 1988.

Scott N. Schreiber, Towbin & Zazove, Chicago, Ill., for plaintiff.

Win Wehrli, Naperville, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before this Court on the Motion for Summary Judgment of Plaintiff, Virtual Network Services Corporation ("VNS") in its action against Thomas Derpack ("Derpack") to recover a preferential payment. The facts are not in dispute. Derpack was employed by VNS from May 3, 1985 to March 7, 1986. The written terms of employment included a specified annual salary, a guaranteed $10,-000 annual bonus and a $250 monthly auto allowance. On April 6, 1986, Derpack filed a wage claim application under the Illinois Wage Payment and Collection Act (Wage Act), Ill.Rev.Stat. Ch. 48, Para. 39m–1 et seq. Derpack sought an unpaid annual bonus, unpaid car allowance and severance pay. After a hearing before the Department on July 7, 1986, Derpack was awarded a car allowance of $2,000 and $2,500 of the annual bonus.

On July 16, 1986, the Hearings Division of the Department sent a letter to VNS, making a formal demand that the company mail a check for $4,500, payable to Derpack, to the Department. The letter stated "Unless you do so within 15 days from receipt of this notice, criminal charges will be filed and prosecuted against you, in accordance with the (Wage Act) ... This decision is based solely on the labor statute cited above." VNS mailed the check to the Department on July 31, 1986.

On September 23, 1986, VNS filed a petition under Chapter 11 of the Bankruptcy Code. VNS has since then acted as debtor-in-possession; no trustee has been appointed. On October 19, 1987, VNS commenced an adversary proceeding to recover alleged preferential payments made to Derpack and others. Both Derpack and VNS have filed motions for summary judgment and submitted briefs.

## DISCUSSION

The issue is whether the payment made to Derpack is a preference as defined by 11 U.S.C. Sec. 547(b) and whether the payment falls within one of the exceptions to the avoidance powers of the trustee listed in subsection (c) (debtors-in-possession as well as trustees have standing to avoid preferences); *In re Levine,* 6 B.R. 54 (Bankr.S.D. Fla.1980), *aff'd,* 16 B.R. 873, *aff'd,* 721 F.2d 750.

The payment to Derpack clearly meets the first four requirements of subsection (b). It was a transfer of property of the debtor (1) for the benefit of a creditor; (2) on account of an antecedent debt; (3) made while the debtor was insolvent; and (4) made within 90 days before the date of the filing of the petition. 11 U.S.C.A. Sec. 547(b) (1979 and Supp.1988). To satisfy the fifth requirement, the debtor must show that the payment to Derpack enabled him to receive more than he would have if the case were under Chapter 7, the transfer had not been made and he received payment of the debt to the extent provided by the Bankruptcy Code. *Barash v. Public Finance Corporation,* 658 F.2d 504 (7th Cir.1981). In a Chapter 11 case, a hypothetical liquidation of the debtor's estate

must be done to determine whether a payment is preferential. *Neuger v. United States (In re Tenna Corporation,* 801 F.2d 819 (6th Cir.1986). As long as the distribution of the estate is less than one hundred percent, any payment to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made. *Barash* at 508–09. Here, the debtor's liquidation plan provides that holders of allowed unsecured claims not entitled to priority under Sections 503(b) and 507 of the Code are entitled to a *pro rata* share of all remaining funds of the VNS estate after payment in full of all allowed priority claims. Because Derpack's wage claim is not for wages earned within 90 days before the filing of the bankruptcy petition, it is not entitled to priority under Section 507(a). Therefore, Derpack would receive less than one hundred percent of his wage claim under a hypothetical Chapter 7 liquidation, and the fifth requirement has been established.

The payment does not fall under one of the exceptions listed in subsection (c), such as contemporaneous exchange for new value given to the debtor or the fixing of a statutory lien. *See* 11 U.S.C.A. Sec. 547(c) (1979 and Supp.1988).

Derpack contends that the wage proceeding commenced by him took on the form of a criminal proceeding when the Department issued its July 16 letter to VNS. Therefore, he argues, the payment made by VNS was essentially one of restitution made pursuant to an order of a governmental unit.

He therefore argues that he received no more than he would have received under a Chapter 7 distribution, i.e., 100%, since his actions would not be barred by the automatic stay under Section 362(b)(4). Derpack cites *In re Dervos,* 37 B.R. 731 (Bankr.N.D.Ill.1984), in support of his argument. In *Dervos,* the owner of a school was prosecuted by the State of Illinois on behalf of four of his teachers for violations of the Wage Act. Dervos, the owner, entered a plea of guilty. In a judgment order dated July 1, 1982, the judgment of convic-tion was deferred and Dervos was placed on supervision until December 9, 1982, with the supervision being conditioned on his payment of back wages to the four teachers. Dervos filed a Chapter 13 petition on September 3, 1982 and failed to make any payments to the teachers. The teachers then filed a complaint to lift the operation of the automatic stay.

The Bankruptcy Court held that the provisions of the judgment order were excepted from the operation of the automatic stay. Because the order of the court directing Dervos to pay his teachers was part of a proceeding which was criminal in nature, its enforcement was excepted from the operation of the automatic stay under 11 U.S.C. Sec. 362(b)(1). It was also excepted under subsection (b)(4) because the proceeding by the State of Illinois was an enforcement of its police or regulatory powers which was not aimed at gaining a pecuniary advantage but designed to protect a broad public interest. *Dervos* at 734.

Because criminal proceedings have not yet been commenced against VNS Corporation or its officers, *Dervos* lends no support to Derpack's argument. The July 7, 1986 wage proceeding before the Department was no more than an "adjust[ment of] controvers[y]" between Derpack and his employer under Illinois Revised Statutes, Ch. 48, Para. 39m–11(a). It was essentially an enforcement of Derpack's private right of action under the Wage Act, with the same result as if he had pursued it himself. See *In re Faber,* 52 B.R. 563 (Bankr.N.D. Ill.1985). The July 16 letter to VNS stated that "criminal charges *will* be filed...." [Emphasis added]. After the check was mailed to the Department, the Wage Act proceeding ended. There was no pending proceeding to be stayed by the corporation's bankruptcy petition. The only issue before this court is whether the payment to Derpack was preferential. Because the payment meets the requirements set forth in Section 547(b) and does not fall under any of the exceptions in Section 547(c) or Section 546, the payment is preferential regardless of the fact that it was made under threat of criminal prosecution.

This court need not now determine whether a continuation of the Wage Act proceeding might fall within the exceptions to the automatic stay contemplated under Section 362(b)(4). The state's public interest could be pursued under the Illinois Wage Act against the corporate officers or other individuals who caused Derpack not to receive his wages. Indeed, the imposition of criminal sanctions is more aptly applied against those individuals rather than against a reorganizing corporate debtor. The penal effect would be meaningless to a corporate debtor-in-possession since its end result would impact mainly upon creditors totally unrelated to the prohibited acts. Indeed, it may be as valid an assumption that Derpack would have proceeded directly against the individuals rather than against the corporate debtor. See Illinois Revised Statutes, Ch. 48, Para. 39m–13: "Any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this [Wage] Act shall be deemed to be the employers of the employees of the corporation."

Although the payment to Derpack was made under the threat of criminal prosecution, it cannot be said that it was in the form of restitution or for the benefit of a governmental unit. There is no evidence that the Code was written to exempt payments such as the one made to Derpack from being returned to the debtor's estate for distribution to creditors.

Accordingly, Plaintiff's Motion for Summary Judgment is granted.