**In re Sidney A. and Diane C. LUTZ, Debtors.**

**George P. DAKMAK, Trustee, Plaintiff,**

**v.**

**UNITED STATES of America (INTERNAL REVENUE SERVICE), Defendant.**

Bankruptcy No. 94–40002–S.
Adversary No. 95–4907.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

May 27, 1997.

Robert A. Peurach, Detroit, MI, for Plaintiff.

*MacDonald,* 69 B.R. 259, 278 (Bankr.D.N.J. 1986).

Doris D. Coles, U.S. Dept. of Justice, Washington, DC, for IRS.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 7 case, the bankruptcy trustee is the plaintiff in this adversary proceeding. Here, plaintiff seeks to exercise his powers under § 547 of the Bankruptcy Code to recover an alleged preferential payment made to defendant, IRS. The pleadings thus present a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

Plaintiff, contending that there is no genuine issue of material fact, has filed a motion for summary judgment. In support of his motion, he has filed his affidavit to which are attached a number of exhibits. Defendant agrees that there is no genuine issue of material fact, and has filed a cross-motion for summary judgment, relying upon the Joint Final Pre-trial Order filed by the parties in connection with the litigation.

The Joint Final Pre-trial Order contains the following Stipulation of Facts:

### IV. *STIPULATION OF FACTS*

1. On December 27, 1993, the debtors made payment(s) to the Internal Revenue Service totaling $82,290.73.

2. The aforementioned payment(s) totaling $82,290.73 were applied by the IRS to satisfy the debtors' 1040 federal income tax liability for the year 1990, which sum, inclusive of interest and penalties, amounted to $61,455.45; as well as debtors' 1040 federal income tax liability for the year 1992, which amount, inclusive of interest and penalties, amounted to $20,835.28. These obligations were antecedent debts within the meaning of 11 U.S.C. § 547.

3. The debtors filed their 1040 federal income tax return for the tax year 1990 on October 17, 1991. The outstanding principal liability was $50,103, less a credit of $2,096 for withheld taxes.

4. The debtors filed their 1040 federal income tax return for the tax year 1992 on September 17, 1993. The outstanding principal tax liability was $19,215.00, less a credit of $780.00 for withheld taxes.

5. With respect to the debtors' tax liability for the year 1990, the IRS filed a Notice of Federal Tax Lien on October 20, 1992. A Notice of Federal Tax Lien was not filed with respect to the debtors' 1992 tax liability.

6. With respect to the payment of the debtors' 1990 income tax liability, $44,250 was applied to tax principal, $8,366.79 was applied to interest, and $8,838.66 was applied to penalties.

7. With respect to the debtors' payment of their 1992 income tax liability, $18,435 was applied to tax principal, $846.53 was applied to interest, and $1,553.75 was applied to penalties.

8. On January 3, 1994, the debtors filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code. On January 6, 1994, George P. Dakmak was appointed as Trustee.

9. Had no payment been made to the IRS, its claims in this case would have included a priority tax claim in the amount of $71,898.32 (partly secured) and a general unsecured penalty claim in the amount of $10,392.41.

10. At the time the bankruptcy petition was filed, the debtors owed taxes to the State of Michigan in the amount of $1,437.35 and the State of Michigan has timely filed a proof of claim indicating that it holds a priority claim against the debtors of $1,437.35.

11. The debtors were also, at the time of the filing of the bankruptcy petition, indebted to creditors holding unsecured non-priority claims exceeding $1,900,000.

12. The Trustee reports that the bankruptcy estate consists of the following assets collected or to be collected by the Trustee:

(a) A contested matter initiated by the Trustee against the Debtors with respect to certain non-exempt assets of the estate which was settled, by Court order, for the sum of $20,000 of which only $5,000 has been paid;

(b) A fraudulent conveyance action brought by the Trustee against Edcor which adversary proceeding was settled, pursuant to order of the Court, for the sum of $20,000, all of which has been collected;

(c) The retrieval of $5,122.81 from an IRA previously owned by the Debtors;

(d) This preference action against the IRS wherein the Trustee seeks to recover the sum of $82,290.73.

The Trustee currently has, on hand, for distribution to creditors, the sum of $29,-181.31.

13. The Trustee claims the following administrative expenses as priority expenses under Chapter 7 of the Bankruptcy Code:

(a) The fees and expenses of the Trustee's attorneys, Fitzgerald & Dakmak, P.C., which, as of October 31, 1996, amounted to the sum of $41,610.18;

(b) The fees and expenses of the Trustee's accountants, Dery, Peters & Associates, which, as of July 11, 1994, amounted to the sum of $9,406.27;

(c) The fees and expenses of the Debtors' attorney Austin Hirshhorn, in the amount of $8,547;

(d) Miscellaneous noticing fees, recording fees, and litigation costs incurred by the Trustee in the amount of $693.69; and

(e) The Trustee's statutory fee (if all assets are collected and disbursed as required by the Bankruptcy Code) in the amount of $3,559.56.

In his affidavit in support of his motion, plaintiff supplements the foregoing Stipulation with the following:

4. In fulfilling the Trustee's statutory duties in administering this Bankruptcy estate, the following administrative expenses have been incurred:

(a) The fees and expenses of the Trustee's attorneys, Fitzgerald & Dakmak, P.C., which, as of December 31, 1996, amount to the sum of $44,257.68;

(b) The fees and expenses of the Trustee's accountants, Dery, Peters & Assoc., which, as of July 11, 1994, amount to the sum of $9,406.27 of which the Court has entered an order awarding $7,500 on an interim basis (a correct and accurate copy of the order is attached hereto as Exhibit 4);

(c) The fees and expenses of the Debtor's attorney, Austin Hirschorn, in the alleged amount of $8,547, of which $4,500 has been approved by the Court on an interim basis (a correct and accurate copy of the order is attached hereto as Exhibit 5);

(d) Miscellaneous noticing fees, recording fees, and litigation costs incurred by the Trustee in the amount of $693.69 which have been paid by the Trustee; and

(e) The Trustee's statutory fee (if all assets, including the IRS preferences, are collected and disbursed as required by the Bankruptcy Code) in the amount of $3,559.56.

5. The services performed by the Trustee's attorneys and accountants and by the Debtor's attorney are set forth, in detail, in their respective applications for compensation filed with the Court. The applications are collectively attached hereto as Exhibit 6. With respect to the fees and expenses of the Trustee's attorneys, Fitzgerald & Dakmak, P.C., the Trustee states that not more than $7,500 of such fees relate to preference recoveries. With respect to the fees and expenses of the Trustee's accountants, Dery, Peters & Assoc.; the Trustee states that not more than $2,000 of such services relate directly to preference recoveries. All other fees and expenses of the aforementioned professionals were incurred in connection with the performance of discharging other duties required by the Trustee to administer this Bankruptcy estate which services are summarized and expressed in detail in the aforementioned applications.

\* \* \* \* \* · \*

On these facts, plaintiff contends that he is entitled to summary judgment because all of the elements of an avoidable preference as stated at 11 U.S.C. § 547(b) were met when the debtor paid the sum of $82,2290.73 to the

IRS on December 27, 1993, the bankruptcy case in which this adversary proceeding arises having been filed January 3, 1994. Plaintiff says that there is no dispute that he has satisfied the statutory requirements contained at § 547(b)(1) through (4), and plaintiff recognizes that defendant disputes that the "greater percentage test," that contained at § 547(b)(5) has not been met. Plaintiff says that it is clear that on the undisputed facts, defendant received more than it would have received if the payment had not been made and distribution had then proceeded. Defendant takes issue with the position of plaintiff, and asserts that its tax claims were priority claims, and if the correct legal standards were applied, it would have received no less upon the application of the greater percentage test than it did receive. Defendant argues that those legal standards lead to a computation of administrative expenses substantially less than computed by plaintiff. Defendant does concede that $10,392.41 of the amount paid to the IRS was on account of penalties for which the tax lien could be avoided, so that that amount was a general unsecured claim and was preferential. The remainder, $71,898.82, defendant says, was not a preference.

Motions for summary judgment are governed by F.R.Civ.P. 56, which is incorporated into bankruptcy practice by F.R.B.P. 7056. That rule provides in part that a motion for summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of showing that there is no issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). The nonmoving party, however, bears the ultimate burden of showing that a genuine issue of material fact exists. In doing so, the nonmoving party cannot rest on its pleadings, but must, in response, offer some evidence which demonstrates a genuine issue of material fact for trial. *Id.*

■ As an initial matter, we address an issue made by plaintiff in his reply memorandum, viz., that by its admission that the payment it received on account of penalty was improper and should be returned, defendant has foreclosed any right to contest that it received a preference. The basis for this contention is that because it received payment for the penalty which it could not receive upon a liquidation, then without question the requirement of § 547(b)(5) is met, for defendant did receive more than it would have on liquidation. Plaintiff bases this contention on the requirement for giving effect to the plain meaning of a statute, and cites as his primary authority *U.S. v. Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). We reject this contention out of hand as oversimplistic. The recognition by defendant of its obligation to return the money received on account of penalty ought not to, and we hold that it does not, lead to the conclusion that defendant may not litigate the issue before us. The portion of the payment on account of penalty is easily separable from the payment on account of tax and is clearly different in character. Disposition of the present motions on this basis would be inappropriate.

■ We turn then to the controversy before the court, whether plaintiff can meet the greater percentage test of § 547(b)(5). The Sixth Circuit, our controlling appellate tribunal, spoke to the issue here presented in *In re Tenna Corp.,* 801 F.2d 819 (6th Cir.1986). That case bore some resemblance to what is before us, for the parties involved were a Chapter 7 trustee and the IRS. The facts diverge from those in the case at hand, because in *Tenna* there had originally been filed a Chapter 11 case which was then converted to Chapter 7. During the life of the Chapter 11, the debtor borrowed some money from a bank giving the bank a super priority status, and the question was whether in applying the greater percentage test by a Chapter 7 trustee, the postpetition super priority monies should enter the computation for greater percentage test purposes. In the course of deciding that they should not, the court applied the rule to be found at *Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936),

the *Tenna* court saying that "Palmer Clay stands for no more than that a payment should be tested as of the date the petition in bankruptcy is filed." 801 F.2d at 822. But then that court said "We recognize that any administrative expenses incurred during the pendency of the bankruptcy proceeding should be included in the determination." 801 F.2d at 823. It is this latter comment upon which the plaintiff bases his presentation. In conducting the greater percentage test, plaintiff relies on administrative claims which include attorney's fees for counsel for the trustee in the amount of $44,257.68. Indeed, his contention that he satisfies the greater percentage test depends upon administrative expenses, including attorney's fees of that magnitude. We hold, however, that such reliance by plaintiff is misplaced.

In the *Tenna* case, the court said: "Administrative expenses are a constant element in all bankruptcy proceedings and can be derived with some degree of certainty, even when constructing a hypothetical liquidation;". 801 F.2d at 823. It is inferable from this statement that the court envisioned including in the computation for greater percentage those routine administrative costs normally encountered in a bankruptcy case. A computation on any other basis is incompatible with the primary holding of *Tenna,* that the greater percentage test must be conducted as of the date of the filing of bankruptcy, a time when events other than the routine have yet to begin to unfold. Here the reason for the magnitude of administrative expense as asserted by the plaintiff depends almost entirely upon fees he says that his attorney has incurred. Such expenses are not "a constant element in all bankruptcy proceedings," and certainly cannot "be derived with some degree of certainty" as of the date the bankruptcy is filed. *Id.* We note further that the amount of attorney's fees for the trustee which are asserted have not been allowed and thus even at this time are entirely speculative.

▮ Reinforcing our conclusion as stated above are the following considerations. Both parties to this adversary proceeding have approached it in terms of preference. Justice requires, however, that we consider whether the purpose of preferences would be served were this court to accept plaintiff's approach. An important bankruptcy text, 5 Collier on Bankruptcy, 15th Ed. Rev. § 547.01, says that the primary purpose behind preference law is that "the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally." Thus, in the conventional preference situation, the contest is between a party which has received a preference and the trustee on behalf of other creditors. That is not the situation here. To make his case as to the greater percentage test, plaintiff must show that the fees which would be allowed to his attorney as an administrative expense are so large in amount that when administrative expenses are taken into account defendant would not receive on distribution, as much as it did receive prepetition. If the plaintiff succeeds here it can only be on the basis that his attorney is entitled to receive as an administrative expense the amount that the trustee claims in his affidavit. Any recovery here by the plaintiff will be devoted, not to benefit creditors, but to satisfy his attorney's claim for fees. We hold that a trustee cannot succeed in a preference action where it is conducted essentially for the benefit of his attorney. Form must yield to substance in the unique circumstances of the present proceeding.

In light of the foregoing discussion, we hold that plaintiff's motion for summary judgment is denied and that of defendant is granted. The complaint is dismissed.

So Ordered.