ORDER ACCORDINGLY.

In re Sidney A. LUTZ and Diane C. Lutz, Debtors.

George P. Dakmak, Trustee, Plaintiff–Appellant,

v.

United States of America, Defendant–Appellee.

No. 97–72678.

United States District Court, E.D. Michigan, Southern Division.

Aug. 12, 1998.

Robert A. Peurach, Fitzgerald & Dakmak, Detroit, MI, for Plaintiffs.

Peter Sklarew, Department of Justice—Tax Division, Washington, DC, Patricia G. Gaedeke, United States Attorney's Office, Detroit, MI, Karen A. Smith, Department of Justice—Tax Division, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is a chapter 7 bankruptcy appeal. 28 U.S.C. § 158. George P. Dakmak, the bankruptcy trustee in this proceeding (the trustee), commenced an adversary proceeding against the United States Internal Revenue Service (IRS) to recover a preferential payment made by the debtors to the IRS. The trustee says the IRS received a greater percentage than it would have if the debtors' assets had been distributed under chapter 7.

The trustee and the IRS stipulated to the facts and each filed a motion for summary judgment. The bankruptcy court denied the trustee's motion and granted the IRS's motion, finding that the payment was not a preference under 11 U.S.C. § 547.[1] Before the Court is the trustee's appeal of the decision.

For the reasons that follow, the decision of the bankruptcy court will be vacated and the case will be remanded.

## II.

### A.

On January 3, 1994, about one week after paying the IRS $82,290.73 for federal income tax liabilities, including interest and penalties, for the 1990 and 1992 tax years, the debtors filed a chapter 7 bankruptcy petition. The amount attributable to the tax penalties, $10,392.41, was avoided by the bankruptcy court as a preference, and the parties do not dispute this ruling. The rest of the payment, $71,898.32, which was attributable to the taxes and interest, was not avoided as a preference.

When the petition was filed, the debtors owed $1,437.35 in taxes to the State of Michigan, and over $1,900,000 to unsecured creditors. During the pendency of the proceeding, the trustee says he has incurred fees and expenses of $66,464.20, including fees for the trustee's attorneys and accountants (hereinafter referred to as "trustee's fees and expenses"), which he asserts are entitled to priority as administrative expenses.

The bankruptcy estate consists of $127,413.54, which, for the purpose of determining whether the payment to the IRS was a preference, includes the $71,898.32 currently in the hands of the IRS.

### B.

The bankruptcy court, relying on the Court of Appeals for the Sixth Circuit's decision in *Neuger v. United States (In re Tenna Corp.)*, 801 F.2d 819 (6th Cir.1986), granted the IRS's motion for summary judgment, finding that the payment to the IRS was not a preference because the trustee's fees and expenses, which may allowed as administrative expenses under § 503(b),[2] " 'are not a constant element in all bankruptcy proceedings,' and certainly cannot 'be derived with some degree of certainty' as of the date the bankruptcy is filed." *See* 212 B.R. at 850 (quoting *Tenna*, 801 F.2d at 823). Although the parties stipulated that the fees of the trustee's attorneys amounted to $41,610.18 as of October 31, 1996, the bankruptcy court opined that "the amount of attorney's fees for the trustee which are asserted have not been allowed and thus even at this time are entirely speculative." *Id.*

The bankruptcy court stated the underlying reasons for its holding:

> If the plaintiff succeeds here it can only be on the basis that his attorney is entitled to receive as an administrative expense the amount that the trustee claims in his affidavit. Any recovery here by the plaintiff will be devoted, not to benefit creditors, but to satisfy his attorney's claim for fees. We hold that a trustee cannot succeed in a preference action where it is conducted essentially for the benefit of his attorney. Form must yield to substance in the unique circumstances of the present proceeding.

*Id.* at 850. As will be illustrated below, this conclusion directly contradicts the clear language of the Bankruptcy Code.

## III.

The only substantive issue on appeal is whether summary judgment is proper. A grant of summary judgment is reviewed *de novo*. *See EEOC v. Universi-*

---

1. *See* 212 B.R. 846 (Bankr.E.D.Mich.1997).

2. Unless otherwise noted, all statutory references are to Title 11 of the United States Code.

*ty of Detroit,* 904 F.2d 331, 334 (6th Cir. 1990). The Court must view the evidence in the light most favorable to the trustee. *See Employers Ins. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 101 (6th Cir.1995).

### A.

█ The issue is whether the IRS would have received $71,898.32 as a distribution in bankruptcy.[3] If not, the transfer is a preference. The parties agree that the elements stated in § 547(b)(1)-(4) are satisfied.[4] The issue, then, is whether the fifth element, § 547(b)(5), also known as the "greater percentage test," is met. In order to establish the fifth element of a preference, the trustee must prove the payment enabled the IRS to receive more than it would have received if:

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

§ 547(b)(5). In other words, "the court must decide the transferee's class and determine what distribution that class would have received had the transfer not been made." [5] 5 *Collier on Bankruptcy* ¶ 547.03[7] (footnotes omitted). In making this determination, although not done so here, a hypothetical liquidation is to be constructed by the bankruptcy court.

The controlling authority on constructing a hypothetical liquidation and the "greater percentage test" is *Tenna.* In *Tenna,* the trustee brought an adversary proceeding against the government to avoid a payment of $527,264.37 to the IRS prior to bankruptcy as a preference. After the debtor filed a chapter 11 petition, the debtor borrowed "substantial funds" from two banks in order to continue its operation. The bankruptcy court gave the banks super-priority liens on the debtor's property under § 364. *See Tenna,* 801 F.2d at 819.

Over two and one-half years after the adversary proceeding was commenced, the bankruptcy court held a hearing to determine whether the payment to the IRS was a preference. By that time, the case had been converted to chapter 7, and the trustee had liquidated almost all assets of the estate. Thus, the question before the court, one of first impression, concerned the "testing date" at which the hypothetical liquidation should be conducted in determining whether the payment was a preference. The trustee had a much high-

---

3. The trustee also argues that because the debtor paid $82,290.73 all at once, the fact that $10,392.41 for the penalties was avoided as a preference mandates that the entire payment of $82,290.73 must be avoided. This argument is in error because it overlooks the fact that the payment of $82,290.73 satisfied different legal obligations with different priorities. *See* § 726(a) ("property of the estate shall be distributed ... first, in payment of claims of the kind specified in ... section 507 ... [and] fourth, in payment of any allowed claim, whether secured or unsecured, for any ... penalty"); § 550(a) (*"to the extent* that a transfer is avoided under section ... 547 ... the trustee may recover, for the benefit of the estate, the property transferred") (emphasis added).

4. Under § 547(b)(1)-(4):
 [T]he trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made—
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider[.]

5. "If, for example, the debtor has only one governmental unit creditor with a valid tax claim entitled to priority under 507(a)(8), the debtor's payment in full to this creditor should not constitute a preference as long as the governmental unit would have received the same distribution in a chapter 7 liquidation case." 5 *Collier on Bankruptcy* ¶ 547.03[7].

er hurdle to jump if the hypothetical chapter 7 liquidation took place at the time the petition was filed; indeed, the estate was remarkably different at that time, as the banks acquired the super-priority liens post-petition, and almost all assets of the estate were depleted when the hearing took place.

The Court of Appeals for the Sixth Circuit, after examining the United States Supreme Court's decision in *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936), held that "only ... creditors with claims against the debtor's estate on the date the petition is filed" are to be considered in the hypothetical chapter 7 liquidation. *Tenna*, 801 F.2d at 823.⁶ Thus, the post-petition super-priority liens, which would have had priority over the IRS's claim had the payment been made in accordance with the chapter 7 distribution rules, were not considered in determining whether the pre-petition payment to the IRS was a preference.⁷

Particularly relevant to this case is the following passage from *Tenna*, in which the Sixth Circuit discussed the effect administrative expenses incurred during bankruptcy have on the hypothetical chapter 7 liquidation:

> *We recognize that any administrative expenses incurred during the pendency of the bankruptcy proceeding should be included in the determination.* It proves too much, however, to assume that including administrative expenses incurred during the reorganization must, by necessity, show a Congressional intention that all debts incurred during reorganization be included. *Administrative expenses are a constant element in all bankruptcy proceedings and can*

> *be derived with some degree of certainty, even when constructing a hypothetical liquidation; super-priority liens, of the type here, do not possess these characteristics.*

*Id.* (emphasis added) (citation omitted).

### B.

The priority of claims under the bankruptcy code is set forth in § 507(a). The assets and debts of the estate are listed in the Appendix to this Memorandum. The administrative expenses of the estate allowed by the bankruptcy court are entitled to priority over claims for unpaid income tax. *See* §§ 507(a)(1), (8). Other than the $1,900,000 in unsecured claims, which are not entitled to priority, it appears that there are no other claims against the estate. Thus, if the estate is large enough to pay the administrative expenses, the Michigan tax liability, and the IRS in full, the pre-petition payment to the IRS was not a preference.

 Before proceeding further, it is necessary to point out that an accurate hypothetical liquidation cannot be constructed here because the bankruptcy court did not determine whether the expenses sought by the trustee are allowed administrative claims. Instead, the bankruptcy court categorically disregarded the trustees fees and expenses because "a trustee cannot succeed in a preference action where it is conducted essentially for the benefit of his attorney." 212 B.R. at 850. However, "[t]he legislative ordering of priorities may not be varied by the courts," 4 *Collier on Bankruptcy*, ¶ 503.05[2], and the Bankruptcy Code provides that the trustee's fees and expenses allowed by the bankruptcy court are enti-

---

**6.** "We can only hold, therefore, that in the context of § 547(b), Congress' stated concern is reflected only for those creditors with claims against the debtor's estate on the date the petition is filed. Nothing in the Bankruptcy Code leads us to a contrary conclusion." *Tenna*, 801 F.2d at 823.

**7.** "Although the Code gives the bankruptcy court power to grant super-priority status to banks which extend credit to debtors during their reorganization efforts under 11 U.S.C. § 364, we can find nothing in the Code indicating that post-petition debt incurred during a reorganization should be included in the § 547 determination." *Id.*

tled to priority as administrative expenses.[8] Therefore, the bankruptcy court had an obligation to determine whether the expenses advanced by the trustee were reasonable and as such allowed as administrative expenses in order to construct the hypothetical liquidation. Solely for the purposes of this appeal, the Court, in viewing the evidence in the light most favorable to the trustee, will consider the expenses asserted by the trustee as reasonable and hence allowed claims against the estate. On remand, of course, the bankruptcy court will determine whether the expenses are reasonable and thus allowed.

### C.

The Appendix to this Memorandum illustrates the hypothetical liquidation. The estate consists of $127,413.54 in assets. The administrative expenses, which are entitled to priority under § 507(a)(1), total $66,464.20. After paying the administrative expenses, $60,949.34 is left for distribution. Thus, the estate has insufficient funds to satisfy the Michigan and federal income tax liabilities of $73,335.67. As such, the pre-petition payment to the IRS of $71,898.32 was more than it would have received had it been paid under the provisions of chapter 7.

### IV.

Although creditors claims are to be considered on the date the petition is filed for purposes of the hypothetical liquidation, on remand the bankruptcy court need not determine the administrative expenses in a vacuum, so to speak. *See In re LCO Enters.*, 12 F.3d 938, 942 (9th Cir.1993) ("The hypothetical liquidation under section 547(b)(5) should not ... be conducted in a vacuum.") (quoting *In re LCO Enters.*, 137 B.R. 955, 959 (9th Cir. BAP 1992) (Perris, J., concurring)).[9] The bankruptcy court in this case had before it the actual administrative expenses incurred through December 31, 1996. Given that a bankruptcy court may allow interim payments of administrative expenses, § 331,[10] and will only allow reasonable compensation for such services rendered, a determination regarding the reasonableness of the actual administrative expenses incurred, and an estimation as to the reasonable expenses for the remainder of the proceeding, will allow a realistic view of what "such creditor would receive if ... such creditor received payment of such

8. Specifically, under § 330(a)(1):

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>> (B) reimbursement for actual, necessary expenses.
>
> Pursuant to § 503(b) "After notice and a hearing, there shall be allowed, administrative expenses, ... including ... compensation and reimbursement awarded under section 330(a) of this title." "Administrative expenses allowed under section 503(b) of this title" have first priority. § 507(a)(1).

9. "The fog which sometimes surrounds bankruptcy issues would have to become much more inspissate before we would fail to see those facts. We cannot ignore them or the legal consequences which flow from them." *In re LCO Enters.*, 12 F.3d at 944.

10. Section 331 provides in pertinent part:

> A trustee ... may apply to the court ... for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.
>
> As noted in 4 *Collier on Bankruptcy* ¶ 503.03[3][a], "Section 331 specifically provides for the interim payment of trustee's examiner's and attorney's fees and other professional compensation allowed as administrative expenses. Some courts have found section 331 and its legislative history to raise a strong presumption in favor of interim payment in full of these administrative claims."

debt to the extent provided by the provisions of this title" under § 547(b)(5). Calculating the trustee's fees and expenses in this manner is consistent with *Tenna,* which provides that "administrative expenses *incurred during the pendency of the bankruptcy proceeding* should be included in the determination" because they "can be derived with some degree of certainty." *Tenna,* 801 F.2d at 823 (emphasis added). Indeed, "[n]either *Palmer Clay* nor *In re Tenna Corp.* prohibit the court from considering the actual facts of the case." *In re LCO Enters.,* 12 F.3d 938, 942 (9th Cir.1993).[11] There is no reason to make the bankruptcy court look back to the estate as it existed at the time the petition was filed in order to estimate the administrative expenses when the actual administrative expenses in a particular bankruptcy are readily ascertainable, and the only determination is whether the compensation for services rendered is reasonable.[12] Further, although there is a concern that the trustee will have the ability "to control the timing for testing whether a payment can be avoided as a preference," *Tenna,* 801 F.2d at 823, the potential for dilatory tactics by trustees to drive up the expenses is negligible because such expenses are allowed as priority claims only to the extent they are reasonable.

### V.

For the reasons stated above, the decision of the bankruptcy court is VACATED and the case is REMANDED to the bankruptcy court. On remand, the bankruptcy court shall determine whether trustee's fees and expenses are allowed as administrative expenses and construct a hypothetical liquidation consistent with this opinion.

SO ORDERED.

*APPENDIX*

**ESTATE—§ 541**

| | | |
|---|---|---|
| Non-exempt assets | $20,000.00 | |
| Recovery of fraudulent conveyance | $20,000.00 | |
| IRA | $ 5,122.81 | |
| Amount sought in preference action | $82,290.73 | |
| | Total estate | $127,413.54 |

**PRIORITY CLAIMS—§ 507(a)**

Administrative expenses—§ 507(a)(1)

| | | |
|---|---|---|
| Fees and expenses of trustee's attorneys (as of 12/31/96) | $44,257.68 | |
| Fees and expenses of trustee's accountants (as of 7/11/94) | $ 9,406.27 | |
| Fees and expenses of debtor's attorney | $ 8,547.00 | |
| Miscellaneous fees and costs incurred by trustee | $ 693.69 | |
| Trustee's statutory fee (if all assets collected and disbursed) | $ 3,559.56 | |
| | $66,464.20 | |
| | Amount remaining in estate | $60,949.34 |

Allowed unsecured claims of governmental units—§ 507(a)(8)

| | | |
|---|---|---|
| 1990 federal income tax liability, with interest | $52,616.79 | |
| 1992 federal income tax liability, with interest | $19,281.53 | |
| Michigan income tax liability | $ 1,437.35 | |
| | $73,335.67 | |
| | Amount remaining in estate | $(12,386.33) |

11. In *LCO Enters.,* the Court of Appeals for the Ninth Circuit was confronted with the issue of whether "the bankruptcy court must hypothesize whether a hypothetical chapter 7 trustee would assume a lease, or whether the court must base its analysis on the fact that the lease was actually assumed in the chapter 11 proceedings." *Id.* at 940. The Ninth Circuit held that the fact that the lease was assumed when the petition was filed should be considered in the hypothetical liquidation. *Id.* at 944.

12. An estimation of the administrative expenses by looking only at the estate at the time the petition was filed provides for expenses only in a typical bankruptcy. For example, a trustee pursuing several fraudulent conveyances or preferences made by a debtor will necessarily incur more expenses than a trustee pursuing a single preference.